on behalf of Appellant Gualajara-Ponce. Here the district court abused its discretion in admitting the primary inspector's referral slip because it was hearsay, which was not admissible under any exception. It was not admissible under the public records exception, and it was not admissible as a prior consistent statement. Breyer, why not as a prior consistent statement? First of all, it came in and during rebuttal, did it not? The actually the referral slip was first admitted, and that's excerpts of record page 144, during the secondary inspector's testimony in the case in chief. It was referred to again in rebuttal and then discussed extensively in rebuttal. Now, the Rule 801d-1 does not admit, does not permit the admission of prior consistent statements in every situation. The first must be an implied or express attack of a charge of recent fabrication or improper motive. Why wasn't there enough of that in the cross-examination of the officer to permit a district court judge to allow it in evidence? During cross-examination, the inspector was simply asked if certain things happened. He denied it. Well, the way I read it, there was an implied attack on the credibility of his testimony. That's the purpose of it was, was to impeach the veracity of his testimony, was it not? Well, he was simply asked, you know, did these things What do you mean by simply? He was cross-examined. Did, you know, Mr. Guadalajara remain silent? He said no. The purpose of the cross-examination was to try to prove that what he said on direct was not correct. That's correct, but that is the purpose of defense advocacy, is to challenge the credibility of a witness. Then doesn't that become appropriate then, doesn't it become appropriate then to introduce evidence such as when introduced in this case to meet that charge of false testimony? Not It wasn't an implied charge of false testimony. It was simply Fabrication. It was simply a challenge to the credibility of the witness. And such a general challenge does not allow the admission of a prior consistent statement. The cases which have held that, for example, reports can be admitted to bolster the credibility of the law enforcement agent, for example, the defense counsel says, well, you didn't put in your report that it said X, or you didn't put in your notes that it said X, and the government then comes up and says, well, here's this report where you did put this in. In that situation, there's just more than contradiction. There's an implication that the agent has fabricated this testimony, and the rebuttal is, no, look, here it is in this other report, and that's a circumstance where it's admissible. What was the nature of the argument that was presented to the trial judge? The nature of the objection to the referral slip was that it was hearsay. Any amplification on that generalized statement? I don't recall, Your Honor. It was not the government did not argue that it was admissible as a prior consistent statement. Kennedy, how did the government argue that it was admissible? I believe as a public record. So, Your Honor, I can just argue that it was admissible as a public record. That's all. That's correct. And the government concedes in its brief that it did not argue before the district court that it was a prior consistent statement. In this case, Mr. Guadalajara simply presented evidence contradicting the agent's express charge of fabrication or improper motive. If you're right, why wasn't it harmless error? This case hinged on credibility, the credibility of the primary inspector's testimony. That was the only evidence of Mr. Guadalajara's intent was whether he had falsely claimed to be a United States citizen of the border or whether he'd remain silent. There was undisputed that there was a letter from the hospital that they had on their this individual was terminally ill and was requesting to see Mr. Guadalajara. There's no dispute at a minimum that this was presented to the secondary officer. There's no dispute that at secondary, Mr. Guadalajara said, I'm a prior deported alien. The only piece of evidence, incriminating evidence, was this primary inspector's testimony that Mr. Guadalajara falsely claimed to be a United States citizen. Mr. Guadalajara denied that. He presented a corroborating witness who was the primary inspector. The referral slip that is hearsay anyway, I don't understand. It doesn't say that your client claimed to be a U.S. citizen. The referral slip says verify United States citizenship, which. It's a command. It's not an assertion of fact at all. The referral slip itself is hearsay, however. It's only hearsay insofar as it's an assertion. I just don't know what it asserts. The government certainly argued that the referral slip established that Mr. Guadalajara had falsely claimed United States citizenship. They asserted that in their closing argument at Excerpt of Record 240. That is what the jury used that for that purpose and saw it as bolstering the inspector's testimony that, in fact, he did hear a false claim of United States citizenship from Mr. Guadalajara. And again, that was the only piece of incriminating evidence. What it says is check U.S. citizenship. Check U.S. here, right? Check U.S. citizenship. I guess one could infer from that a number of things. One of them would say, I'm not sure whether this person is a citizen or there is not sufficient proof of citizenship. Let's say somebody walks up and they're carrying a driver's license, a California driver's license. The primary inspection officer might say, gee, driver's license is not exactly proof of citizenship. It's not at all proof of citizenship because you can get a driver's license in California even if you're not a citizen, which is different from having a passport. So I'm going to pass him the secondary and have the people at secondary sort out whether or not this person is a U.S. citizen. But that's a long ways from saying this person claimed to be a U.S. citizen. I just don't see it in the piece of paper. I don't see where the assertion exists. And without an assertion, I don't know whether you have CRC at all. As the testimony was elicited, the primary inspector indicated that because of the false claim to United States citizenship, he referred the individuals to secondary. That was his testimony in the stand. He said, on the stand he says, he claimed to be a U.S. citizen, and I referred him to secondary. That's what he said. That's correct. That's why I referred him to secondary. And then he submits a piece of paper later on. But the piece of paper doesn't say anything about a claim of U.S. citizenship. The piece of paper does indicate verify USC. That's the notation on there with also a checkmark under. Where is the factual assertion there? The assertion would be his statement about verifying a claim of United States citizenship. That's the assertion that's there. That's a command. It doesn't say anything about the description of the facts. I mean, verify U.S. citizenship could be consistent with this person has no ID. It could be consistent with this person has ID that I consider to be inadequate. It could be consistent with this person presented a passport that I believe is false. Or this could be consistent with, I suppose, saying this person claims to be a U.S. citizen, but I don't believe it. Now, all of those things, I mean, could be consistent with any of those things. I guess it could also be consistent with I don't, you know, I'm sort of busy. And I don't have time to check these people, so I'll send a secondary. And I'm just letting you know I haven't verified U.S. citizenship. His testimony was that it was, he referred them, Secretary, for the false claim. And secondary's testimony was they received the referral slip and interpreted it as a false claim to United States citizenship. That was the, that's how they. It was used as evidence that they had falsely claimed U.S. citizenship. That's correct. And so that is a hearsay purpose. And it did constitute improper bolstering of the. As a matter of fact, the government admits that in the brief. It says verify U.S.C.s, i.e. to verify Guadalajara's and Luna's claim to United States citizenship. It was used as an assertion to prove the truth of the matter asserted. And it was an out of court statement. It was actually used, I don't understand. I mean, I realize the government makes also the foolish statement in this brief. But I, we are viewing this in court's actions, not the, not the government's concessions. And I, I'm, I, I'm, in, in, in saying that it was used that way. What, what, what, what do you mean? It was offered for that purpose. It was argued as establishing United States citizenship. It was, it was not one of the speculative possibilities that Your Honor mentioned. It was offered as an assertion. It was testified to as an assertion. Was it objected to as being irrelevant? It was not objected to on relevancy grounds. And of course, of course, counsel could have said, look, they rely on the slip of paper, but the slip of paper says nothing. There's no fact there. The, the, all it says is a command. Check U.S. citizenship. The, the parties in the district. Counsel could have objected to government's argument. Counsel could have taken the piece of evidence and said, look, it doesn't say what the government claims it says. The parties and the district court assumed that it was hearsay and that it fell within, or, or, the district court and government assumed that it fell within the public records exception. It was offered as an assertion. It was argued that way. That's the way the testimony was elicited. And that's the way likely the jury understood it, understood it. So everybody thought it was foul rather than fish. So we have to treat it as foul, even though it's clearly fish? I, I, I, I, I, I don't get it. I mean, we see, you know, this comes into the jury. And the question is, what does it say to the jury? The jury looks at it, and it's a command. It says, check U.S. citizenship. There's nothing, there, there's not, you know, quite different if the statement said, I asked whether he's a U.S. citizen, and he said yes. That would be quite different. But in combination with his testimony in which he asserted that that notation and that referral slip was an assertion of, or established, a false claim to United States citizenship, that's the only way the jury could have understood it. Not as an order to check citizenship, but actually as an assertion that he in fact falsely claimed citizenship, and that's why that they were, they were being referred to the secondary inspection. And he testified that when he, when they introduced that? When did he testify that? There are, there are three instances in which the referral slip was discussed. It was first attempted to be introduced during the primary inspector's testimony in the case in chief, the district court reserve ruling, and then during the secondary inspector's testimony about the referral to secondary. That is when the government introduced it into evidence. And the secondary inspector, I believe, indicated that he was, he was seeking more information on a false claim to United States citizenship. And the, the third time that it was discussed was in the rebuttal testimony. The single, the Inspector Florando, where they went through each category of the referral slip and discussed the, that, I believe the discussion of the verification of the citizenship was also at that point discussed. And what did the agent say? You know, I don't, I don't recall if I could discuss that on rebuttal after reviewing it. Okay. We'll hear from the government. Steve Miller for the United States. The court did not abuse its discretion by admitting this referral slip into evidence. From Judge Trott's comment about when it was admitted, I think a chronology and a context is in order here. During the primary inspector's testimony, I offered it. It was not stated, but it was as a public record, a ministerial document. The judge reserved ruling on that. Then, when I called the secondary officer, I went through my direct examination, did not refer or make reference to the referral slip. Then there was a cross-examination establishing the circumstances of his contact with the defendant and the driver. And then on redirect for the primary, I then made reference to the referral slip. Wait a minute. You had, the primary officer was already off the stand. You had the secondary officer. Correct. On redirect. So the document was not used as a prior consistent statement of the prior, of the primary officer. You introduced it when the secondary officer was on. Correct. It wasn't a prior consistent statement of the secondary officer. No. No. But, which is why the chronology and the context is important. Because during the cross-examination of the secondary officer, evidence was that the driver came up and presented him this envelope. And then during his testimony, well, you took possession of this envelope. It was addressed to the INS. And you opened it. No, I didn't open it. And then to put into context why this secondary officer would be presented with a letter and not bother to open it, then we got into the referral on redirect, where he said, I received this referral slip. From whom did you receive it? I received it from Mr. Luna, the driver, in addition to this letter. And then got into what it commanded, verify the United States citizenship. Well, the reason he didn't open up the letter was because he, the secondary officer, had these two conflicting. So the secondary officer understood it to be evidence of an assertion of claim of citizenship to the primary. No. He, when he received the letter and he saw verify United States citizenship, at that time, he knew that the command was to verify United States citizenship. But because he had the letter and it conflicted with the referral slip, he then telephoned the primary officer and said, well, did you get this letter? What happened here? And at that time, the primary officer said, no, verify US citizenship. This one guy said he was a United States citizen. At that time, the secondary then examined the appellant. Now, the secondary officer testified that the primary officer had told him that this man had made a claim. Correct. And that came in without a hearsay objection. And then at that time. Time out. Did that come in without a hearsay objection? Correct. Oh, no, it was a continuing objection. But at that time, it was a continuation of the earlier objection. What at that time, I said, at that time, I asked. Because at the time, it was to explain the effect upon the hearing. Why? Not for the purpose of showing the truth of the matter asserted, but explain behavior. Correct. Did you tell that to the judge? We're not introducing this as hearsay? No. What happened was at that time, I said, do you still reserve ruling? And the judge said, it's admitted. Objection noted. So you didn't make a claim that it wasn't hearsay. It just came out of the float. But then. The reason for these rules of evidence, and you really got to be precise, especially with an appellate court going to be looking over your shoulder. Oh, I understand. But which goes also to the rebuttal evidence. It was not so much the assertion that was on the referral slip or the case. The defendant, defense witness, the passenger said, well, as soon as we drove up, Mr. Luna was handing that letter to the primary. And the primary inspector was having nothing to do with it. He didn't want to see it. May I ask you a question? Yes. Did the primary inspector on direct examination testify that the petitioner, the appellant, told him that he was a U.S. citizen? Yes, he did. And that is on reporter's transcript 73 and 74. And the defense was, no, he didn't. The defense was, no, he didn't. And in the opening statement, it said, defendant never said he was a U.S. citizen and that there's a dispute exactly what was said and done at primary. So when you got, so then when you finally got into it, you got into it as a prior consistent statement? Yes. Did you call it a prior consistent statement? No, not at that time. Why not? Because it didn't occur to me at that time until rebuttal. Until rebuttal. Because. During rebuttal, did you call it a prior consistent statement? No. No. At all times, you were just calling it a public record. It had already come in. But it's not, I. By that time, it had been admitted as a public record? It had been as a public record and to explain the effect on the hearer, why the secondary officer didn't open up this letter. Now, there was no dispute that there was this letter. But the big. I don't understand this explaining the effect on the hearer. I've never heard of that answer to a hearsay objection. Is to explain why someone acted the way they did after they. Not admitting it for the purpose of showing the truth of any matter asserted, but to show how somebody reacted when confronted with the statement. Yes, but during the defense case. No, no, no. I just heard Judge Trout restate your reason, but I still don't get it. Is. Why does it matter why the officer reacted the way he did? Because. It has to be something that's relevant to the proceedings. The fact that he had a reason. What is what does that have to the proceedings? Because the assertion was that, well, he presented this letter to the secondary officer. And then the evidence was he had the sealed letter addressed to the INS. He didn't open it. Well, why didn't he open it? Well, because he had the referral slip saying verify U.S. citizenship. And that as a result of these two inconsistent documents, the secondary officer then called the primary and said, well, what what happened here with respect to the of the prior consistent statement? Did the defendant ever ask on what ground it was offered other than as a public document? And did he ever ask for a limiting instruction? No, but what happened was after the passenger testified that when they drove up, the driver tried to hand him that letter and that the primary inspector was going to have nothing to do with it. He said he didn't want to look at it. Then on rebuttal, the primary inspector, Florendo, testified, this is what I would have done had there been a letter asking for a humanitarian visa. I have done it before. I have done it before where the circumstances was they were they were handing me a letter. And the first thing I do is I ask, what is this letter? And then after I hear what the letter is about, I then read it. And then whenever there is an application for a humanitarian visa at the border and I examine the letter, I then fill out a referral slip and it says special permit. And that every time someone would have made a humanitarian visa, he would then refer them to secondary for the secondary to help them process it or examined the person to see whether or not they would qualify for a humanitarian visa. Were you aware of the Oriana Blanco rule that you can't use public records if they if they have nesting hearsay that's inadmissible observations from police officers? Yes, I am, Your Honor. But in this case. Then why didn't you spot that when you were offering this as a public record? Now that you admit it was a tantamount to a claim of U.S. citizenship. Well, I don't I don't admit. Which would seem to fall within Oriana Blanco. I don't admit that it's tantamount to a U.S. citizenship. You claim, you say in your brief it was to verify Guadalajara and Luna's claim to United States citizenship. That's a that's a rational deduction that if if the inspector says I asked him what his citizenship was and he told me U.S. citizenship, that in the context of other evidence, that in light of the context of his claim, I did not say anything. And that I tried or that my brother-in-law tried to offer this letter to the primary that in the context that the referral slip says verify U.S. citizenship, that the going through the effort to verify U.S. citizenship and the absence of saying process special permit or special permit leads to a reasonable deduction that the primary officer's testimony is correct. And that the defendant's statement, I said, a substantive evidence that the guy claimed U.S. citizenship. That within the that corroborates, but it's not within the context, it's what evidence would corroborate that the defendant said, I'm a U.S. citizen. And if he had if he had a counterfeit U.S. passport to say I'm a U.S. citizen and then he said I never said that I was a U.S. citizen, it's not so much a hearsay statement that he said he was a U.S. citizen, but it's evidence corroborating that one version is accurate and that the other version should be questioned. Yeah, it seems like you're having trying to have it both ways. One on one hand, you're trying to tell us that it wasn't hearsay because you didn't offer for the truth of the matter asserted simply to explain the behavior of the secondary person. But then on the other hand, you're saying that it's substantive evidence that the guy did claim would be for the truth of the matter asserted. That is one of the pieces of evidence that leads to the deduction that corroborates the testimony of the primary inspector and and also explains in the context of what the what the what the primary inspector did and why he did not do certain things. Why didn't he? If the defendants was going to apply for humanitarian visa and they presented the letter there, he would have put down special permit. Did you argue that the referral slip was proof that he made a false claim of citizenship to the primary inspector? I said that that that that is why the primary inspector's statement that he asked the defendant, are you a U.S. citizenship citizen or what's your citizenship and that the defendant said he was a U.S. citizen and that he was born in L.A. is more trustworthy than the defendant's assertion and his witnesses assertion that when he was asked anything, he said nothing. Is there any doubt that there was a letter in fact? There was a letter, right? Oh, there's no doubt about that and that was entered into without objection. I find it strange that they have a letter like that. They don't in fact hand it up and have it looked at and say, oh, I'm a U.S. citizen when they've got this letter saying let him in even though he's not a U.S. citizen when asked about it. I find this very strange. I'm sorry, you find it strange that they would not have presented the letter in primary? Yeah. Well, the reason being, Your Honor, and I got into this both in my brief and in my arguments, the reason it was not presented at primary is because the reason the defendant was deported was because he was convicted of an aggravated felon. So they wouldn't pay any attention to the letter? But also that the defendant has the specific knowledge that the possibility that he would be granted a humanitarian visa was remote. And I asked him that on cross-examination and his response was, well, I had to try. I asked him specifically, and you knew because you were convicted of an aggravated felony that caused you to be deported that the possibility of you being granted this visa was remote. And he said, I had to try. So that's because he knew that the conviction... I didn't know what I had to try to get you. I mean, I had to try means, well, you know, I had this letter. I had to try to get in even though I... How does that help your assertion? I mean, your theory is that he didn't use the letter at all. He didn't try. Instead, he claimed to be a U.S. citizen. Yes, and that... What is it when he says to you, I had to try, what was he referring to? Is that even though he knew that the possibility of this being granted a humanitarian visa was remote because of the nature of his conviction, that he still had to try, and that he tried by plan A, by false claim to U.S. citizenship, as opposed to trying to go through the possibility that he asked for a humanitarian visa with a knowledge he probably did not have. It doesn't make any sense at all. Only if you understand rule four. It doesn't make any sense at all. Well, in my closing argument, I... Huh? In my closing argument, I delineated between plan A and plan B. Explain how you get that statement from the secondary officer, the primary officer told him that he had claimed to be a U.S. citizen, how that comes in. I mean, why that isn't slam-dunk here, say, reversible error. That the referral slip is a ministerial document. No, no, no. I'm talking about the statement. Well, I don't know. Oh, no, if you review the record, are you asking about, and I apologize, I know I'm six minutes over, here for the duration of what you want. You're wasting time. Just answer the question. I don't believe that the record showed that there was a statement from the primary to secondary that he said he was a U.S. citizen. You said that the secondary guy testified that he called the primary and the primary said he... That the purpose was verify U.S. citizenship. I don't, I would have to go back to the record. I don't believe that the secondary... I thought you said that he claimed that the secondary testified that the primary told him that he had claimed to be a U.S. citizen. That's what I heard you say. And you said that was okay because it explained the reaction of the secondary. And also it wasn't objected to, as he was saying. No, actually, I think what counsel said was that it was a continued objection. You're correct. It said, what I did is I contacted the primary officer to see what was their claim. The primary officer, Flernder, specified that the driver, Mr. Guadalajara, claimed to be United States citizens. Right. And I heard you say earlier there was a continuing objection. No, the continuing objection was I asked him, was this communicated through the referral slip? He said, no, I phoned him. And then... I'm sorry, are you saying there was no objection to the statement about the secondary officer statement that you just read? There was no, here's your objection to that? There was no objection to that. We're distinguishing between the secondary officer saying I contacted the primary... I just thought to ask you this very question. Was there an objection to the statement by the, because he wasn't as surprised as I was, to hear there was a statement by the secondary officer about what the primary officer said. Right. And if there's no objection to that, then the slip becomes harmless because he's already said what the primary officer said. Yes, there was no... I just thought to ask you, was there an objection? And I heard you say there was a continuing objection. That's right. And what I thought that you were asking about the objection was with regard to the referral slip, because after the secondary inspector said I contacted primary and that's what he said, which was that they both claimed United States citizenship, the question, and was that communication through the referral slip that is Exhibit A, and found out this one, this one is that the other one I made contact with Officer Florendo. Did you make the call, did you call him on the phone before or after he served Exhibit A? After I, eight, I'm sorry, after I received Exhibit 8. Yes. And this is how Exhibit 8, the referral slip, came in. I turned to the court, do you still reserve judgment regarding admissibility of 8? The court, is there a continued objection? Yes, Your Honor. Exhibit 8, I would overrule the objection. But somebody said, and what did primary tell you on the phone? And primary said, well, the guy claimed U.S. citizenship. There was no objection to something like that. Correct. And that, and when I was talking about the continuing objection, I was talking about when it was the primary, I offered it. Did you put all this in your brief to show that if this was there, it was harmless? I'd have to review my brief with regard to the part. Many lawyers read their briefs before they come to court. It's a good practice, you know. I understand that. To know what you said. Okay, we'll hear from, we'll hear about it. While the issue is hot, is it true that the primary told the secondary they made a false, they made a claim of U.S. citizenship and that came in without objection? Looking at that ER 145, that appears to be the case. If that's the case, then why isn't the referral slip harmless? If you've got the basic evidence from the secondary, the primary told me he made a false claim of citizenship, there's no objection, then where do we get with the referral slip? The statement about contacting the primary officer to see what was their claim is irrelevant to any issue in the case. Why? Well, why is it irrelevant? I mean, there's evidence. The guy made a claim of U.S. citizenship. Correct. It was simply bolstering. The essence of the case. It was simply bolstering the credibility of the primary officer. But there it is. That's correct. And it was improper. What does the slip add? It was improper to do that, to have the secondary officer talk about being, it looks like the communication was through both the referral slip as well as the phone call. After he receives the referral slip, he makes the phone call. But if the essence of the phone call is in without objection, okay, the guy made a claim of citizenship. That's the end of the case. That's the end of the case in terms of whether it's harmless there. I mean, at that point, counsel jumps up and say, don't say another word. I raise a hearsay objection. He's about to testify as to what somebody else told him. There should have been a hearsay objection. There never should have been a hearsay objection. There was a focus on the referral slip and the notation in the referral slip. That's what I meant by the rules of evidence. You know, this is the kind of thing to get doctors in operating rooms in malpractice suits. That's correct. It was error to fail to object to that. It was clearly hearsay. It was not relevant. The secondary, why the secondary officer is talking to Mr. Gualajara, the reason that he's doing that is not relevant. Okay. Thank you very much. The case is signed. You will stand submitted. We have another case. That's submitted. One more case to the audit. Go for it. Let's keep going. Mr. Curnow is here. Yes, I know. Mr. Curnow is here. And I assume Mr. Lopez or Ms. Lopez is here. Okay. Well, then we can proceed with Taurus Hernandez. The United States v. Taurus Hernandez, which I understand is a grand jury selection case. A grand jury selection case. This is a favorite issue of the public defendants of Southern District, California, who never cease to bring us interesting issues, for which we are very grateful. I'm sure you are. Well, I am. I can't speak for the entire court, for all of my colleagues.
judges: Kozinski, Trott, Bea